IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>DEREK CHARLES MICKO,<br>     Debtor.<br><br>———<br><br>DEREK CHARLES MICKO,<br>     Plaintiff,<br><br>v.<br><br>STUDENT LOAN FINANCE CORPORATION,<br>     Defendant. | Chapter 7<br><br>Case No. 2:05-bk-24789<br><br>Adversary No. 06-82<br><br>**MEMORANDUM DECISION** |

## **I. INTRODUCTION**

This matter comes before the Court on the parties' request for what is essentially summary judgment. On January 17, 2006, the Debtor and Plaintiff herein, Derek Micko, filed a Complaint for Declaratory Relief to determine the dischargeability of his student loan obligations ("Complaint"). At a Rule 16 Scheduling Conference on July 6, the Court and the parties determined that the matter could be resolved as a matter of law after briefing and oral argument. The parties filed a stipulated "Statement of Facts" on August 4, 2006, and the Plaintiff filed his memorandum of law on August 7, 2006. The Defendant, Student Loan Finance Corporation ("SLFC"), filed its Reply on August 14, 2006. The Defendant also filed a Motion to Dismiss Complaint on August 7, 2006. The Court held oral argument on August 21, 2006, at which time the parties requested additional time to determine whether there was any further legal support for their respective positions. The

Court ordered the parties to submit their respective case law citations, if any, by August 25, 2006, at which time the matter would be deemed under advisement.[1] On August 25, 2006, the Plaintiff submitted his Supplemental Brief Regarding In re Udell, 454 F.2d 180 (3rd Cir. 2006). On August 26, 2005, the Defendant responded in a Sur-Reply.[2]

In this Memorandum Decision, the Court has now set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2006).

## II. FACTUAL BACKGROUND

The Plaintiff filed a petition for relief under Chapter 7 of the Bankruptcy Code on October 14, 2005 and received a discharge on February 13, 2006. On January 17, 2006, the Plaintiff filed his Complaint seeking a determination that his indebtedness to the Defendant is discharged under 11 U.S.C. § 523(a)(8). The Plaintiff seeks to discharge 13 loans owed to the Defendant, disbursed on 13 different dates, and totaling approximately $80,585.90.

The Defendant, formed in 1978 as a nonprofit entity, is now an employee-owned S corporation. It specializes in loans to students seeking to obtain higher education. Each loan obtained by the Plaintiff was memorialized by a Loan Application and Promissory Note. Many portions of these documents were to be completed by authorized school officials only, and "School Codes" used in these forms are the codes assigned to institutions of higher education by the United States Department of Education. The documents include information regarding the applicant's enrollment status, anticipated graduation date, and cost of attendance. Further, each loan includes a "Statement of Borrower's Rights and

---

[1] Minute Entry of August 21, 2006.

[2] The Defendant entitled its Reply as being in support of a "Motion for Finding of Nondischargeability." The Defendant also filed a Motion to Dismiss. Since the Complaint focuses on the issue of nondischargeability, if the Defendant is correct in its legal analysis, the Court must dismiss the Complaint.

2

Responsibilities" which describes payment deferment eligibility. The Defendant follows similar procedures for deferment on the notes as those utilized for the Federal Family Educational Loan Program ("FFELP").[3] If the borrower, in this case the Plaintiff, has no FFELP loans, the "eligibility will be the same as Federal Stafford loans disbursed on or after July 1, 1993."[4]

The Defendant extended the loans at issue to the Plaintiff to allow him to attend the University of North Dakota. The loans were made pursuant to the Great Opportunities Academic Loan Program and are known as "GOAL Notes." The GOAL program is not funded in any part by a governmental unit or nonprofit institution. However, GOAL Notes are "qualified educational loans" under the Internal Revenue Service Publication 970 (2005). As such, subject to Internal Revenue Code income limitations, the interest paid by borrowers under GOAL Notes is deductible from the borrower's gross income when paying income taxes. Additionally, under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), such "qualified educational loans" are now nondischargeable in bankruptcy. See 11 U.S.C. § 523(a)(8)(B) (2006). However, because of the filing date of this bankruptcy case, BAPCPA does not apply. Notably, it is undisputed that the Plaintiff received the loans as an "educational benefit." Additionally, the Plaintiff is not seeking to discharge the loans on a determination of "undue hardship." Thus, this Court's determination of whether the Defendant's loans are within the parameters of a "student loan" under Section 523(a)(8) will determine whether judgment should be entered in favor of the Plaintiff, discharging said loans, or his Complaint should be dismissed.

## **III. ISSUE PRESENTED**

Because the facts are undisputed, the parties seek a legal determination of whether the loan obligations should be discharged. The Plaintiff asserts that his indebtedness

---

[3] "Statement of Facts" of August 4, 2006, at ¶ 8.

[4] Id.

3

Case 2:06-ap-00082-SSC    Doc 23    Filed 12/05/06    Entered 12/07/06 13:38:32    Desc
Main Document    Page 3 of 11

to the Defendant does not fall within the purview of 11 U.S.C. § 523(a)(8), which provides that discharge will not be granted:

> for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

It is clear that the Defendant is not a governmental unit, and the parties agree that the program under which the loans were offered was not funded in whole or in part by a governmental unit or a nonprofit institution. Additionally, the Plaintiff is not seeking to discharge the loans on a determination of "undue hardship," and the parties agree that the loans conferred an "educational benefit" upon the Plaintiff. The issue for this Court to determine is whether the Defendant's loans to the Plaintiff are "obligations to repay funds received as an educational benefit" under 11 U.S.C. § 523(a)(8).

## IV. DISCUSSION

As noted previously, the parties agree that the legal issue presented may be resolved pursuant to the statement of facts presented by the parties. The Court need only determine which party is entitled to a judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 Sup. Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Each party has presented a different analysis as to the interpretation of Section 523(a)(2)(8). Any exercise of statutory interpretation must begin with the language of the statute itself. United States v. Ron Pair Enters., 489 U.S. 235, 241 (1989); In re Perez, 318 B.R. 742, 747 (Bankr. M.D. Fla. 2005). If no ambiguity appears on the face of the statute, its plain meaning is to be given effect. Ron Pair, 489 U.S. at 241 ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982))); In re Proalert, LCC, 314 B.R. 436, 441 (9th Cir. BAP 2004) ("When the words of a statute are clear, 'judicial inquiry is complete.'"

4

(quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)).  When a statute's language is clear, "the sole function of the court is to enforce it according to its terms."  Ron Pair, 489 U.S. at 241.

The Plaintiff argues that the loans he received from the Defendant do not fall within the ambit of the nondischargeable loans in Section 523(a)(8), which are described as "obligation[s] to repay funds received as an educational benefit."   The Plaintiff argues that loans from private lenders, although they may confer an "educational benefit" on the borrower, are not within the parameters of Section 523(a)(8).  The Plaintiff asserts that because the Section limits nondischargeable educational benefit overpayments or loans to those "made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution," the phrase "obligation to repay funds received as an educational benefit" must apply only to government units or nonprofit lenders.  To hold otherwise, the Plaintiff argues, would render the first portion of the Section superfluous.  The Court disagrees.

Although the Court has reviewed the decision of In re Udell, 454 F.3d 180 (3rd Cir. 2006), the case does not resolve the issues at hand.  The defendant in Udell was expelled from the United States Air Force Academy before he was able to complete his compulsory years of service in the Air Force.  The cost of his education at the Academy, to be repaid through Air Force service, became due and owing as a monetary amount.  He sought to discharge that obligation in bankruptcy.  The Udell Court considered the application of 10 U.S.C. § 2005(d), which makes an educational obligation owed to the government and arising in connection with service in the armed forces nondischargeable for five years after such service has ended; but that statute is silent as to the dischargeability of the obligation thereafter.  The Third Circuit concluded that once the five years had passed, 11 U.S.C. § 523(a)(8) would make the loans nondischargeable.  Id. at 186.  It held that the loans were "plainly an educational benefit made under a program funded by the government and Udell [had] an obligation to repay funds received as an educational benefit."  Id. at 185-86.  The

5

Court assumed the loans were an "obligation to repay funds received as an educational benefit" without comment. Id. It did not elaborate on the issue at hand: whether such a loan was the only type of "obligation to repay funds received as an educational benefit" rendered nondischargeable by Section 523(a)(8). Not only does the Udell opinion lack analysis relevant to this matter, but the Udell Court ultimately found the loans to be nondischargeable on a separate ground; that is, the loans were funded under a government program. However, the Udell Court rejected the debtor's argument that his educational loans were dischargeable because of the legislative history of Section 523(a)(8). Citing Ron Pair, 489 U.S. 235, 240-41, the Court held that "the plain language of a statute is normally regarded as conclusive" and declined to look beyond the ordinary meaning of Section 523(a)(8). Id. at 186-87.

The Ninth Circuit case of In re Nys, 446 F.3d 938 (9th Cir. 2006), is similarly inapposite to the matter at hand. In a footnote, the Ninth Circuit states that Section 523(a)(8) does not discharge any individual Chapter 7 debtor's educational debt, unless excepting the debt from discharge "would impose an undue hardship on the debtor and the debtor's dependents, for . . . . an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." Id. at 942, n.3. The Plaintiff uses this citation to assert that only those loans mentioned in the Section itself are nondischargeable, creating an inference that others are dischargeable. However, the quotation is not applicable to this case for three reasons. First, the Ninth Circuit quoted the language of BAPCPA, yet its decision and this matter concern an interpretation of the Bankruptcy Code before its recent revisions. Second, the Plaintiff's reliance is misplaced because the Ninth Circuit is quoting only a portion of Section 523(a)(8). The Section continues with the following language: "an obligation to repay funds received as an educational benefit, scholarship, or stipend; *or any other educational loan that is a qualified education loan. . . .*" 11 U.S.C. § 523(a)(8) (2006) (emphasis added). In essence, the Nys decision focuses on the issue of undue hardship, an

Case 2:06-ap-00082-SSC   Doc 23   Filed 12/05/06   Entered 12/07/06 13:38:32   Desc
Main Document      Page 6 of 11

issue not in dispute here. Finally, the footnote cited was not critical to the decision in Nys; hence, it is only dicta, if that, and need not be followed by this Court.

The Plaintiff places great reliance on a series of cases involving private schools which provided driver training, primarily to those individuals who wished to obtain commercial licenses to drive trucks. See In re Scott, 287 B.R. 470 (Bankr. E.D. Mo. 2002); United Resource Sys., Inc. v. Meinhart, 211 B.R. 750 (Bankr. Colo. 1997); and McClure v. Action Career Training (In re McClure), 210 B.R. 985 (Bankr. N.D.Texas 1997) (collectively, "the driving school cases"). Each of these cases considered the dischargeability of loans extended by a private, for-profit truck driving school to a student of that school. Scott, 287 B.R. at 472; Meinhart, 211 B.R. at 752; McClure, 210 B.R. at 985. In each case, the Court determined that the loans were dischargeable and were not "obligation[s] to repay funds received as an educational benefit" within the meaning of Section 523(a)(8). Scott, 287 B.R. at 474-75; Meinhart, 211 B.R. at 753-55; McClure, 210 B.R. at 987-88. The Scott Court, for example, interpreted the phrase, "obligation to repay funds received as an educational benefit" to exclude the loans extended by the private school at issue. Scott at 474. It opined, without citation to authority, that the phrase was applicable to "grants that must be repaid only under certain conditions (like the failure of a medical student grant recipient to practice in a physician shortage area after graduation)." Id. The Scott Court provided no basis for this conclusion, and this Court finds it unpersuasive.[5]

The defendants involved in the three driving school cases are easily distinguished from the Defendant before this Court. In each of the driving school cases, the defendant offered student loans to attract customers for its for-profit business operations. Unlike the driving school defendants, the Defendant, in this case, is not a for-profit vocational training school that uses the prospect of financial aid to recruit students. Rather, the

---

**5** The recent Third Circuit decision of In re Udell, 454 F.3d 180 (3rd Cir. 2006) does not cite or refer to Scott even though the dicta might arguably support the Court's conclusion in Udell.

7

Defendant loans money only to students who attend post-secondary schools that participate in federal student aid programs administered by the United States Department of Education. The "School Codes" it uses on its loan applications are those issued by the United States Department of Education. The loan deferments on the GOAL notes extended to the Plaintiff are identical to those deferments to which federal student loan notes are subject. The Defendant specializes in servicing educational loans made pursuant to the Federal Family Education Loan Program. Thus, the Defendant's practices are much like those of the nonprofit lenders and governmental units that Section 523(a)(8) is intended to protect: namely those that lend money only to students obtaining higher education, and whose ability to lend money to additional students largely depends on the repayment of prior loans. See In re McLeroy, 250 B.R. 872, 878 ("By enacting section 523(a)(8), Congress sought principally to protect government entities and non profit institutions of higher education - *organizations which lend money or guarantee loans to individuals for educational purposes* - from bankruptcy discharge." (emphasis added)). In fact, the Defendant began operation in 1978 as a nonprofit lender. Although its organizational form has changed, it continues to operate in a manner substantially similar to a nonprofit institution.

       Even the documentation or funding mechanisms for the loans at issue in the driving school cases are substantially different from the loans at issue in this case. In the Scott case, for example, the loan was evidenced by a "Retail Installment Contract." Scott at 472. In Meinhart, the Court expressed doubt that the monies at issue had ever been "received" by the debtor, as Section 523(a)(8) requires. Meinhart at 754-55. It is undisputed that the loans at issue in this case were appropriately disbursed to the Plaintiff on the 13 disbursement dates stipulated by the parties. Moreover, each loan was evidenced by a Loan Application and Promissory Note, part of which was completed by the Plaintiff and part of which was completed by the post-secondary school he attended. Sections of the Loan Applications included government issued school codes and other information typically provided by schools to student aid programs funded by the government or by nonprofit

institutions. Because the schools in Scott, Meinhart, and McClure did not participate in federal or nonprofit student loan programs, the schools provided loans that were much more similar to "retail installment contracts" extended to customers purchasing goods or services than student loans. The loans were provided to enable the debtors in those cases to purchase, over time, a service the school provided. The GOAL notes at issue in this case allowed the Plaintiff to finance a post-secondary education - the same education that loans provided to him by government or nonprofit lenders would have allowed him to finance.[6]

To hold that Section 523(a)(8) applies to "obligation[s] to repay funds received as an educational benefit" if they were extended only by governmental units or nonprofit entities would depart from the plain meaning of the statute. If Congress had intended to limit nondischargeable obligations to repay funds received as educational benefits to certain institutions, such as governmental units or nonprofit lenders, Congress would have so indicated.

Instead, the statute provides a broad description of obligations to repay money modified only by the words "received as an educational benefit." The fact that certain loans funded by the government or a nonprofit institution are separated from the "funds received as an educational benefit" by the conjunction "or" further supports the Defendant's assertion that a broader category of loans was interpreted by Congress as being nondischargeable. "Courts . . . are obligated to refrain from inserting language into a statute that Congress has opted to omit." In re USinternetworking, Inc., 291 B.R. 378, 381 (Bankr. Mary. 2003). Thus, this Court must look to the plain meaning of Section 523(a)(8), which renders an "obligation to repay funds received as an educational benefit" nondischargeable. An obligation is defined as "a commitment (as by a government) to pay a particular sum of money, also: an amount owed under such an obligation." MERRIAM-WEBSTER DICTIONARY (2006). It is undisputed that the

---

[6] The Plaintiff apparently sought at least some of the loans from the Defendant because he reached the monetary limit for student loans provided by the government or nonprofit lenders.

9

Plaintiff committed himself to repay the money extended to him by the Defendant, as evidenced by the GOAL notes. Additionally, it is undisputed that the loans at issue conferred an educational benefit on the Plaintiff. Thus, on the plain language reading of the statute that Ron Pair requires, the Plaintiff's loans are nondischargeable.

Although this case was filed prior to the effective date of BAPCPA, that Act's provisions reinforce the conclusion that Section 523(a)(8)'s language regarding "an obligation to repay funds received as an educational benefit" should necessarily include lenders such as the Defendant. Since its enactment as part of the Bankruptcy Reform Act of 1978, Section 523(a)(8) has been amended several times. From these amendments, a general pattern has emerged. Each time, Congress has provided additional protection from discharge to lenders offering student loans. Compare, e.g., 11 U.S.C. § 523(a)(8) (1988) (excluding from discharge "educational loan[s] made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit, or nonprofit institution") with 11 U.S.C. § 523(a)(8) (1990) (excluding from discharge the same items as before with the addition of "obligation[s] to repay funds received as an educational benefit") and 11 U.S.C. § 523(a)(8) (2005) (excluding from discharge the same items as before with the addition of "any other educational loan that is a qualified educational loan, as defined in Section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual." Qualified educational loans are loans incurred by a taxpayer that are used to pay higher education expenses. See I.R.C. § 221(d)(1) (2006)). The latest version of Section 523(a)(8), making "qualified educational loans" nondischargeable, is simply a clarification by Congress that entities extending loans to individuals in order to enable those individuals to attend institutions of higher education are entitled to be protected with a nondischargeable obligation unless a debtor may prove an undue hardship. This Court's analysis of Section 523(a)(8) is consistent with Congressional intent.

The Court acknowledges concerns regarding such an interpretation of 11 U.S.C. § 523(a)(8). However, any concerns as to interpretation may be addressed

10

on a case-by-case basis. The lender in this matter has established procedures which are substantially similar to a governmental unit or a nonprofit lender. Such an entity should be entitled to the protections of Section 523(a)(8). Moreover, BAPCPA has clarified the language at issue to the extent it is necessary.

## IV. CONCLUSION

Based on the stipulated facts, and the plain meaning of 11 U.S.C. § 523(a)(8), this Court concludes that the Plaintiff's educational obligation to the Defendant, in the amount of $80,585,90, plus interest accruing at the contract rate, is nondischargeable. The Plaintiff's Motion to have judgment entered in his favor is denied. The Defendant's Motion that the Plaintiff's Complaint be dismissed is granted. The Court will issue a separate order incorporating this Memorandum Decision.

**DATED this 5th day of December, 2006.**

**Honorable Sarah Sharer Curley
United States Bankruptcy Judge**

BNC to notice.